HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

MICHELE KING,

             Plaintiff,

        v.

THE PORT OF SEATTLE,

             Defendant.

No. 2:19-cv-01878-BJR

AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLLY STORED
INFORMATION AND ORDER

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.**  **General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.    As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLLY
STORED INFORMATION AND [PROPOSED] ORDER - 1

No. 2:19-cv-01878-BJR
18950.00000 nh122201

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    **B.     ESI Disclosures**

2          Within 14 days of entry of this Order, or at a later time if agreed to by the parties, each

3    party shall disclose:

4          1.     <u>Custodians.</u> The five custodians most likely to have discoverable ESI in their

5    possession, custody, or control. The custodians shall be identified by name, title, connection to

6    the instant litigation, and the type of the information under the custodian's control.

7          2.     <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared

8    drives, servers), if any, likely to contain discoverable ESI.

9          3.     <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to

10   contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud

11   storage) and, for each such source, the extent to which a party is (or is not) able to preserve

12   information stored in the third-party data source.

13         4.     <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable

14   ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically

15   identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P.

16   26(b)(2)(B).

17

18   **C.     ESI Discovery Procedures**[1]

19         1.     <u>On-site inspection of electronic media.</u> Such an inspection shall not be required

20   absent a demonstration by the requesting party of specific need and good cause or by agreement

21   of the parties.

22         2.     <u>Search methodology.</u>  In addition to the obligations of each party to produce

23   relevant documents already known to exist and ask relevant witnesses about the existence and

24   whereabouts of relevant communications, the parties shall timely confer to attempt to reach

25   agreement on appropriate search terms and queries, file type and date restrictions, data sources

26

27   _____
     [1]      This agreement does *not* require the parties to re-produce electronically stored
     information that has already been produced in discovery.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLLY
STORED INFORMATION AND [PROPOSED] ORDER - 2

No. 2:19-cv-01878-BJR
18950.00000 nh122201

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   (including custodians), and other appropriate computer- or technology-aided methodologies,

2   before any such effort is undertaken. The parties shall continue to cooperate in revising the

3   appropriateness of the search methodology.

4           a.      Prior to running searches:

5                   i.      The producing party shall disclose the data sources (including

6   custodians), search terms and queries, any file type and date restrictions, and any other

7   methodology that it proposes to use to locate ESI likely to contain responsive and discoverable

8   information. The producing party may provide unique hit counts for each search query.

9                   ii.     The requesting party is entitled to, within 14 days of the

10  producing party's disclosure, add no more than 10 search terms or queries to those disclosed by

11  the producing party absent a showing of good cause or agreement of the parties.

12                  iii.    The following provisions apply to search terms / queries of the

13  requesting party.  Focused terms and queries should be employed; broad terms or queries, such

14  as product and company names, generally should be avoided.  A conjunctive combination of

15  multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count

16  as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*,

17  "computer" or "system") broadens the search, and thus each word or phrase shall count as a

18  separate search term unless they are variants of the same word.  The producing party may

19  identify each search term or query returning overbroad results demonstrating the overbroad

20  results and a counter proposal correcting the overbroad search or query.  A search that returns

21  more than (500) unique documents, excluding families, is presumed to be overbroad.

22          b.      After production:  Within 21 days of the producing party notifying the

23  receiving party that it has substantially completed the production of documents responsive to a

24  request, the responding party may request no more than 10 additional search terms or queries.

25  The immediately preceding section (Section C(2)(a)(iii)) applies.

26

27

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLLY
STORED INFORMATION AND [PROPOSED] ORDER - 3

No. 2:19-cv-01878-BJR
18950.00000 nh122201

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1        c.      Nothing in this agreement limits the right of a party to review documents

2  returned by the search terms prior to production for relevance, responsiveness, and privilege.

3

4      3.     <u>Format.</u>

5        a.      ESI will be produced to the requesting party with searchable text, in a

6  format to be decided between the parties. Acceptable formats include, but are not limited to,

7  native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs

8  (only with load files for e-discovery software that includes metadata fields identifying natural

9  document breaks and also includes companion OCR and/or extracted text files), and searchable

10  PDF (only with appropriate load files for e-discovery software preserving document breaks,

11  document families, and the metadata noted below).

12        b.      Unless otherwise agreed to by the parties, files that are not easily

13  converted to image format, such as spreadsheet, database, and drawing files, will be produced in

14  native format.

15        c.      Each document image file shall be named with a unique number (Bates

16  Number). File names should not be more than twenty characters long or contain spaces. When a

17  text-searchable image file is produced, the producing party must preserve the integrity of the

18  underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where

19  applicable, the revision history.

20        d.      If a document is more than one page, the unitization of the document and

21  any attachments and/or affixed notes shall be maintained as they existed in the original

22  document.

23      4.     <u>De-duplication.</u> The parties may de-duplicate their ESI production across

24  custodial and non-custodial data sources after disclosure to the requesting party, and the

25  duplicate custodian information removed during the de-duplication process tracked in a

26  duplicate/other custodian field in the database load file.

27

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLLY
STORED INFORMATION AND [PROPOSED] ORDER - 4

No. 2:19-cv-01878-BJR
18950.00000 nh122201

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

5.   <u>Email Threading.</u>  The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.  Upon reasonable request, the producing party will produce a less inclusive copy.

6.   <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

7.   <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D.   Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLLY
STORED INFORMATION AND [PROPOSED] ORDER - 5
No. 2:19-cv-01878-BJR
18950.00000 nh122201

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1.     Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.     The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.     Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

      a.     Deleted, slack, fragmented, or other data only accessible by forensics.

      b.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

      c.     On-line access data such as temporary internet files, history, cache, cookies, and the like.

      d.     Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

      e.     Back-up data that are duplicative of data that are more accessible elsewhere.

      f.     Server, system or network logs.

      g.     Data remaining from systems no longer in use that is unintelligible on the systems in use.

      h.     Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLLY
STORED INFORMATION AND [PROPOSED] ORDER - 6
No. 2:19-cv-01878-BJR
18950.00000 nh122201

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**E.      Privilege**

1.      A producing party shall create a privilege log of all documents fully or partially withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order.

2.      The parties agree that attorney-client privileged communications between the parties and their private counsel, and work-product information generated by them, after Defendant's receipt of notice that Plaintiff intended to file a Charge of Discrimination with the EEOC (December 30, 2016) need not be contained on a privilege log.  All other documents that are withheld from production on the basis of privilege or work product must be included on a privilege log.

3.      Redactions of personal identifiers (see Local Civil Rule 5.2) from produced documents need not be logged so long as the basis for the redaction is clear on the redacted document.

4.      Privilege logs shall include (a) a unique identification number for each document, (b) the basis for the claim (attorney-client privileged or work-product protection), (c) the nature and extent of the information withheld sufficient for the other party to evaluate the claim of privilege, the (d) author/sender, (e) recipient(s) and all persons copied, (f) date, (g) document title, and (h) number of pages.

5.      For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include the additional information set forth in Paragraph 4 above.

6.      Privilege logs will be produced to all other parties within 14 days following the date the discovery response is due (for future discovery requests) and within 30 days of the date this Agreement is filed (for documents withheld in response to earlier discovery requests).

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLLY
STORED INFORMATION AND [PROPOSED] ORDER - 7

No. 2:19-cv-01878-BJR
18950.00000 nh122201

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

7.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

8.      Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

DATED: August 26th, 2020

MacDONALD HOAGUE AND BAYLESS

*/s/Katherine Chamberlain*
Katherine Chamberlain, WSBA #40014
Tiffany Cartwright, WSBA #43564
Attorneys for Plaintiff Michele King
705 Second Ave, Suite 1500
Seattle, Washington 98104
Phone: (206) 622-1604
Email: katherinec@mhb.com
          tiffanyc@mhb.com

BLOOM LAW PLLC


*/s/Beth Bloom*
Beth Barrett Bloom, WSBA #31702
Rory O'Sullivan, WSBA #38487
Attorneys for Plaintiff Michele King
3827-C South Edmunds St.
Seattle, Washington 98118
Phone: (206) 323-0409
Email: bbloom@bloomlawpllc.com
          rosullivan@bloomlawpllc.com

FOSTER GARVEY PC

*/s/Kelly Mennemeier*
Diana S. Shukis, WSBA #29716
Kelly Mennemeier, WSBA #51838
Attorneys for Defendant Port of Seattle
1111 Third Avenue, Suite 3000
Seattle, Washington  98101
Phone: (206) 816-1475
Email: diana.shukis@foster.com

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLLY
STORED INFORMATION AND [PROPOSED] ORDER - 8
No. 2:19-cv-01878-BJR
18950.00000 nh122201

**MacDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

## ORDER

4

Based on the foregoing, IT IS SO ORDERED.

5

6

DATED: <u>September 1, 2020</u>

7

8

Barbara Jacobs Rothstein
U.S. District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLLY
STORED INFORMATION AND [PROPOSED] ORDER - 9

No. 2:19-cv-01878-BJR
18950.00000 nh122201

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961